**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID J. GRENON<br>3801 S. Skyview Drive<br>Spokane, WA 99203<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE<br>1400 Defense Blvd.<br>Pentagon<br>Washington, D.C. 20301<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 23-cv-137 |

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF

1.     This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, challenging the disability rating assigned by the Secretary of the United States Army ("Army"), a branch of the United States Department of Defense ("DoD"), to Plaintiff David J. Grenon, a former Army Captain ("Plaintiff" or "Captain Grenon").

2.     The permanent disability rating first assigned to Captain Grenon by the Army (10%) on his removal from the Temporary Disability Retired List, and affirmed by the Secretary in 2020 after a recommendation from the Physical Disability Board of Review, was arbitrary, capricious, unsupported by substantial evidence, and contrary to law.

3.     The Secretary's determination of Captain Grenon's combined disability rating was arbitrary, capricious, unsupported by substantial evidence, and contrary to law because the

Secretary failed to: (1) award Captain Grenon a 30% rating for his unfitting head injury and cognitive disorder; and (2) find Captain Grenon's cervical fracture and fusion injuries unfitting at the time of his discharge. Captain Grenon suffered, and continues to suffer, a legal wrong as a result of the Secretary's arbitrary and capricious decision.

4.      Specifically, as a result of the Secretary's determination, Captain Grenon was deprived of lifetime healthcare benefits for himself and his family, as well as other benefits, including access to military bases, commissary privileges, the right to wear their uniform on appropriate public occasions, "space-available" travel on military aircraft, and burial privileges in national cemeteries.

5.      Captain Grenon was adversely affected and suffered a legal wrong because of that final agency action, and thus he is entitled to judicial review under the APA. *See* 5 U.S.C. § 702. The APA authorizes this Court to set aside any agency decision that is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Id.* § 706(2)(A) & (E). The Secretary's determination that Captain Grenon did not merit a combined disability rating of at least 30% is arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law.

## JURISDICTION AND VENUE

6.      Jurisdiction in this Court is based on a federal question and is proper under 28 U.S.C. §§ 1331, 2201, and 2202. Plaintiff seeks relief under the APA, 5 U.S.C. §701 *et seq.* Venue is conferred on this Court under 28 U.S.C. §1391(b)(1).

## PARTIES

7.     Plaintiff David J. Grenon served on active duty in the Army (i) from September 25, 1989 until June 1, 1994, and (ii) from November 28, 2001 until January 1, 2004, when the Army honorably discharged Captain Grenon and placed him on the Temporary Disability Retirement List. He was later removed from the Temporary Disability Retirement List and medically separated from the Army on July 6, 2005. Captain Grenon is a citizen of the United States and currently resides in Spokane, Washington. Throughout his service, he was a member of a regular component of the armed forces entitled to basic pay, and he is thus an eligible member as required for disability retirement under the Career Compensation Act of 1949. 10 U.S.C. § 1201(a), (c).

8.     Defendant DoD, 1400 Defense Pentagon, Washington, D.C. 20301, is a department of the Executive Branch of the United States Government. The Secretary is the head of the Department of the Army, a branch of DoD. DoD is an agency of the United States as defined by the APA, 5 U.S.C. § 701(b)(1), and falls within the scope of 28 U.S.C. §1391.

## THE GOVERNING LEGAL FRAMEWORK

### I.     *The Army's Physical Disability Evaluation System*

9.     The process for evaluating a service member's fitness for duty because of a possible disability is typically triggered when a concerned commanding officer or military physician refers the service member to a Medical Evaluation Board. *See* Army Regs. 635-40 ¶ 4-7, 40-501. The Medical Evaluation Board examines the service member, documents the member's medical status and limitations, and determines whether the member's condition meets the medical standards to remain in active service. *Id.* ¶¶ 4-10, 4-11. If the Medical Evaluation

Board determines that the service member's condition does not meet the retention standards, the Medical Evaluation Board refers the member's case file to a Physical Evaluation Board ("PEB"). *See id.* ¶ 4-13; *see also* 10 U.S.C. § 1222(b)(1)(A).

10.     After such a referral, the PEB evaluates the service member and makes findings and recommendations about the member's fitness for duty. *See* Army Reg. 635-40 ¶ 4-19. The PEB will consider a service member unfit "when the evidence establishes that the member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating." 10 U.S.C. § 1201; DoDI 1332.38 ¶ E3.P3.2.1. Determining whether a member can reasonably perform his or her duties includes consideration of whether the service member can perform common military tasks, complete a physical fitness test, or deploy. DoDI 1332.38, ¶ E3.P3.4.1.1.

11.     If the PEB determines that the service member's unfitting condition is stable and permanent, it must assign the member a disability rating—a value between 0% and 100%, set in increments of 10%—using the Schedule for Rating Disabilities of the United States Department of Veterans Affairs ("VA"). DoDI 1332.38, ¶ E4.A1.1.2.12. If the Army assigns the service member a combined disability rating of 20% or less, the service member is medically separated with a lump-sum severance payment. 10 U.S.C. § 1203(a), (b)(4). But if the Army assigns the service member a combined disability rating of 30% or more, the service member is medically retired. *See id.* § 1201.

12.     Medically retired service members receive significant benefits, including lifetime access to health insurance for themselves and their family. *See* 32 C.F.R. § 199.17. Other benefits include access to military bases, commissary privileges, the right to wear their uniform

on appropriate public occasions, "space-available" travel on military aircraft, and burial privileges in national cemeteries. *See, e.g.*, *id.*; DoD Instruction 1330.17, encl. 2 ¶ 3(c)(1); DoD Instruction 4515.13 § 4.8(q).

13.    If a service member would be qualified for medical retirement but for the fact that it cannot be determined that the member's disability is "stable," then the member is placed on the "temporary disability retired list" with retirement pay. 10 U.S.C. § 1202. Service members on the temporary disability list must undergo an examination at least every 18 months to "to determine whether there has been a change in the disability for which he was temporarily retired." *Id.* § 1210(a).

14.    These periodic examinations are also used to determine whether the service member's disability remains unfitting. If so, the PEB must then determine whether the service member's condition is now permanent and stable. If the PEB determines that the service member's unfitting condition is now permanent and stable, it must assign the member a permanent disability rating using the VA's Schedule for Rating Disabilities. *Id.* § 1210. As described above, if the Army assigns the service member a combined disability rating of 20% or less, the service member is medically separated with a lump-sum severance payment, *see id.* § 1210(e), but if the Army assigns the service member a combined disability rating of 30% or more, the service member is medically retired, *see id.* § 1210(c).

**II.    *The Physical Disability Board of Review***

15.    A service member medically separated between September 11, 2001 and December 31, 2009 who disagrees with their combined disability rating may appeal the PEB's decision to the Physical Disability Board of Review ("PDBR"). The PDBR was established to

provide a forum in which service members, like Captain Grenon, could have inaccurate and unjustifiably low disability ratings reviewed and corrected. Hearing to Receive Testimony on the Department of Defense and Veterans Affairs Disability Rating Systems and the Transition of Servicemembers from the Department of Defense to the Department of Veterans Affairs J. Hearing Before the S. Comm. on Armed Servs. & S. Comm. on Veterans' Affs., 100th Cong. 104 (2007) (statement of Lieutenant General James Terry Scott (Ret.), Chairman, Veterans' Disability Benefits Commission).

16.     Congress created the PDBR in response to a 2007 Congressional Veterans' Disability Benefits Commission report that analyzed tens of thousands of DoD and VA ratings issued between 2000 and 2006 and determined that "the combined disability ratings made by VA are higher, on average, than the combined ratings made by the services at almost all rating levels." *Id.*

17.     At a 2007 joint congressional hearing that led to the Wounded Warriors Act, General James Terry Scott stated that it is "apparent that DoD has strong incentive to assign ratings less than 30% so that only separation pay is required and continuing family health care is not provided." *Id.*

18.     The PDBR was thus created to establish "an independent board to review and, where appropriate, correct unjustifiably low Department of Defense disability ratings awarded since 2001." *See* 153 Cong. Rec. S9857, 9858 (July 25, 2007) (statement of Sen. Carl Levin). Consistent with that purpose, the PDBR will "reassess the accuracy and fairness of the combined disability ratings" for eligible service members. DoD Instruction 6040.44 ¶ 3a. In its review, the PDBR must use the VA's Schedule for Rating Disabilities (VASRD) in effect at the time of the

service member's separation, and may not consider any regulations or guidelines inconsistent with the VASRD. *See id.*, encl. 3 ¶ 4f. Service members may also submit new evidence for the PDBR's consideration. 10 U.S.C. § 1554a(c)(2).

19.     When the PDBR reviews a PEB decision involving a service member who has a competing disability rating assigned by the VA, the PDBR must consider that VA rating, "particularly if the VA rating was awarded within 12 months of the former Service member's separation." DoD Instruction 6040.44, encl. 3 ¶ 4a(5)(b). And if "there is a question as to which of [the] two evaluations shall be applied," the PDBR must assign the higher rating "if the disability picture more nearly approximates the criteria required for that rating." 38 C.F.R. § 4.7. The PDBR must likewise resolve any reasonable doubt about the service member's disability rating in favor of the service member. *Id.* §§ 3.102, 4.3.

20.     After  completing its review, the PDBR may issue a recommendation to the Secretary of the Army about whether to (1) change the service member's separation to retirement; (2) increase the disability rating assigned by the PEB; or (3) issue a new disability rating. 10 U.S.C. § 1554a(d). The PDBR's issuance of such a recommendation authorizes the Secretary to make the corresponding correction to the service member's record. *Id.* § 1554a(e). As part its review of the disability rating, the PDBR is required by law to strictly follow the VASRD. 10 U.S.C. § 1216a; DoDI 6040.44 encl. 3, § 4.

21.     Relevant here is diagnostic code 8045-9304 of the VASRD. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of another diagnostic code to identify the specific basis for the rating assigned. 38 C.F.R. § 4.27. The first diagnostic code identifies the diagnosed disease or condition. The second code identifies the

criteria in the rating schedule used to evaluate the disability. Diagnostic code 8045-9304 therefore shows that Captain Grenon was diagnosed with brain disease due to trauma or TBI under Diagnostic Code 8045, which was evaluated as dementia due to head trauma under 38 C.F.R. § 4.130, Diagnostic Code 9304. *See* 38 C.F.R. §§ 4.124a, 4.130 (2005).

22.     The VA's Schedule of ratings for Mental Disorders is set forth in 38 C.F.R. § 4.130. Under this schedule, the Army and the VA are required to rate dementia due to head trauma by evaluating the veteran's level of occupational and social impairment caused by head trauma. A 30% disability rating is warranted when there is "occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events)." *Id.* A 10% rating is warranted when a service member or veteran suffers from "Occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication." *Id.*

23.     The list of symptoms under the rating criteria are examples of symptoms that would warrant the rating, but are not exhaustive. *Mauerhan v. Principi*, 16 Vet. App. 436, 442-43 (2002).

## CAPTAIN GRENON'S MILITARY SERVICE

24.     Captain Grenon served honorably on active duty for approximately seven total years, from September 25, 1989 to June 1, 1994, and from November 28, 2001 to January 1,

8

2004. He served as a Field Artillery Officer (13A) with multiple overseas deployments, including during Operation Desert Storm. Captain Grenon served in the same capacity on the National Guard for another seven years. Captain Grenon was awarded several medals and citations, including the Army Commendation Medal (3rd Award), Army Achievement Medal (3rd Award), National Defense Service Medal (2nd Award), Southwest Asia Service Medal with 2 Bronze Service Stars, Army Service Ribbon, Overseas Service Ribbon (2nd Award), and Kuwait Liberation Medal.

25.     On November 28, 2001, Captain Grenon suffered a service-related injury while reporting to duty at Camp Murray in Tacoma, Washington. Captain Grenon was in a car accident where he sustained a closed head injury with cognitive disorder and a cervical fracture. The Army found that these injuries were service-related. Just after his accident, Captain Grenon spent several weeks in the hospital to receive medically necessary intensive treatment for his head injury.

26.     In January 2002, after his initial head trauma had partially healed, Captain Grenon underwent surgery for his cervical fracture. Despite undergoing significant cervical physical therapy, Captain Grenon still experienced neck pain, cramping, and a reduced range of motion.

27.     Along with his neck pain, Captain Grenon continued to suffer from neurological and neuropsychological deficits, including distractibility, gait and balance issues, decreased reading comprehension, and decreased memory.

28.     Because of these deficits, Captain Grenon was referred for an electronystagmography and neuropsychological study. The electronystagmography study

revealed oculomotor findings that were "abnormal" and "suggest[ed] the presence of a lesion within the . . . cerebellum." Captain Grenon's neuropsychological evaluation revealed significant deficits, including a slowed mental processing speed, strength, and coordination of his dominant hand; and "a pronounced verbal learning and memory impairment." As a result, Captain Grenon was diagnosed with "cognitive disorder, not otherwise specified."

29.     A military physician concluded that Captain Grenon was likely "unfit for duty" and would be limited in his capacity as a civilian police officer, and referred Captain Grenon to the MEB.

**I.     *Captain Grenon's 2003 MEB and PEB Decisions***

30.     In May 2003, as a result of his unresolved duty-limiting neck and head injuries, Captain Grenon was referred to the MEB and given a physical examination.

31.     The MEB concluded that "[p]ost-traumatic encephalopathy residuals prevent [Captain Grenon] from performing [the] duties of his MOS" and so his cognitive disorder failed retention standards and required a referral to the PEB. The MEB concluded that Captain Grenon's c-spine fracture and fusion met retention standards.

32.     On November 17, 2003, the PEB concluded that the functional limitations caused by his cognitive disorder rendered Captain Grenon medically unfit to perform the duties required of a soldier of his rank and specialty. However, the PEB also determined that Captain Grenon's unfitting head injury was insufficiently stable and/or permanent for placement on the Permanent Disability Retirement List. The PEB thus placed Captain Grenon on the Temporary Disability

Retirement List on January 1, 2004,[1] with a 30% disability rating under VASRD Diagnostic Code 8045-9304, 38 C.F.R. §§ 4.124a and 4.130.

## II.    *Captain Grenon's Initial Veterans Affairs Examinations and Rating Decision*

33.    After Captain Grenon's placement on the Temporary Disability Retirement List, he applied for benefits with the VA. Captain Grenon underwent a VA Compensation and Pension examination on March 17, 2004 for his closed head injury, cognitive disorder, and his cervical fracture.

34.    For his closed head injury, the VA examiner confirmed Captain Grenon's diagnosis of "[s]tatus post closed head injury with residual of frequent recurrent headaches" and functional impairment due to post traumatic encephalopathy, among others. The VA examiner noted that as a result of his closed head injury, Captain Grenon suffered from "[r]ecurrent headaches occur with migraine type, throbbing and dull pain" that made it difficult to focus. The examiner also reported Captain Grenon's balance remained impaired "with any rapid positional change."

35.    The examiner reported that Captain Grenon was "moderately unsteady" with his eyes closed or in a dark environment and that he "must avoid heights and dangerous situations."

36.    The VA examiner confirmed that Captain Grenon suffered from "cognitive disorder, not otherwise specified" that caused short-term memory, immediate visual memory, and visual perseverance deficits. The VA examiner also reported that Captain Grenon had

---

[1] The PDBR Record of Proceedings mistakenly state that Captain Grenon was placed on temporary disability retirement on January 2, 2004.

11

difficulty in concentration, shifting focus of attention, and performing simultaneous cognitive tasks. As a result of his cognitive disorder, the VA examiner determined that Captain Grenon would likely have "difficulty [in] establishing and maintaining his effective work and social relationships," "difficulty in performing his duties as a patrolman[,] and . . . time lost at work."

37.    The VA physician thoroughly evaluated Captain Grenon's cervical spine condition on March 17, 2004. The physician measured Captain Grenon's cervical spine range of motion at 40 degrees in flexion. "For VA compensation purposes, normal forward flexion . . . of the thoracolumbar spine is . . . 90 degrees." 38 C.F.R. § 4.71a (2021).

38.    The limited range of motion caused Captain Grenon to turn his body instead of his head, neck, and shoulders. The physician noted that Captain Grenon continued to suffer from "constant" pain in his neck and trapezius muscles, which was exacerbated by physical activities and stress. During the examination, the physician noted that Captain Grenon was in pain beginning on the flexion of 35 degrees and that this pain was a "major" limiting factor on his range of motion. The VA physician also noted that, because of this lack of flexion, Captain Grenon was functionally impaired. The physician noted that Captain Grenon could not read or look at a computer for long periods of time and that he had been unable to work for two years.

39.    On the same day, Plaintiff underwent a cervical spine x-ray. The x-ray results revealed that there was "scoliosis of the cervical spine concave to the left." The x-ray results also revealed fusion at the C6-7 level, "osseous union," and four to five millimeters of displacement of C6 with respect to C7.

40.    On October 5, 2004, the VA assigned Captain Grenon a 30% disability for his closed head injury with cognitive disorder and recurrent headaches under VASRD Diagnostic

Code 8045-9304 because "[t]he findings for short-term memory loss and headaches which produce difficulty in performing your occupational duties meet the criteria for a 30 percent evaluation." The VA rated Captain Grenon's "post cervical fracture and fusion" at 20 percent under diagnostic code 5241 ("Spinal fusion"). The VA pointed to findings of the compensation and pension exam from March 2004, and concluded that "the findings of a solid osseous union with muscle spasm meet the criteria for a 20 percent evaluation."

### III.    *Captain Grenon's TDRL Examination*

41.    On May 20, 2005, another PEB reviewed Captain Grenon's case and assigned his cognitive disorder a 10% permanent rating under VASRD Diagnostic Code 8045-9304. The PEB stated that this rating was appropriate because Captain Grenon "[h]as returned to full time work as a police officer in former civilian job. Neuropsychiatric testing indicates mild-to-moderate impairment but descriptive data leans toward mild. ***No significant change in symptoms or management*** in past interval. Symptoms are sufficient to prevent return to active service in prior MOS. Stable for final rating purposes. Rated as mild" (emphasis added).

42.    The PEB failed to explain why Captain Grenon's rating decreased from 30% to 10%, even though the PEB found "[n]o significant change in symptoms." Based on the PEB's conclusions, referenced above, the Army removed Captain Grenon from the Temporary Disability Retirement List on July 6, 2005 without a disability retirement. The Army assigned Captain Grenon a combined disability rating of 10%, entitling him to only a lump-sum severance payment and not ongoing medical benefits.

### IV.    *Captain Grenon's Second VA Examination and Rating Decision*

43.    On June 23, 2005, just one month after the PEB reduced Captain Grenon's 30%

disability rating to 10%, VA examiners reassessed Captain Grenon's head injury and its resulting cognitive dysfunction. The VA examiner reported that as a result of his head injury, Captain Grenon still suffered from a cognitive disorder characterized by reoccurring daily headaches, dizziness, short-term memory loss, and difficulty concentrating and multitasking. In the same month, Captain Grenon was also examined by a VA psychiatrist who noted that Captain Grenon suffered from depressive disorder characterized by anger issues, depressed mood with a limited ability to enjoy, increased irritability, and limited self-esteem. Ultimately, the VA examiners concluded that Captain Grenon suffered from "mild-to-moderate difficulties with regard to his cognition."

44.    On September 26, 2005, the VA continued the 30% disability rating for the "status post closed head injury with cognitive disorder and recurrent headaches" based on his experiencing short-term memory loss, difficulty multi-tasking, and depressive disorder.

45.    The VA found that Captain Grenon still suffered from cervical fracture and fusion and assigned it a disability rating of 20%, following the VASRD schedule of disabilities, due to Captain Grenon's forward flexion of the spine being only 40 degrees and x-ray showing scoliosis. The illnesses listed under 5235 through 5243 are rated under the criteria for diseases and injuries of the spine. Under this rating schedule, spine injuries qualify for a rating of 20% if there is "forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees," or if the injury was severe enough to cause an abnormal spinal contour condition such as, among others, scoliosis. VASRD DC 5241, 38 C.F.R. § 4.71a (2021).

## V.    *The Physical Disability Board Of Review's Decision*

46.    On May 28, 2019, Captain Grenon applied to the PDBR for an increase in the

combined disability rating assigned by the Army. Captain Grenon requested that the PDBR recommend that: (1) his closed head injury with cognitive disorder be rated at no less than 30%; and (2) his cervical fracture and fusion be found separately unfitting with a disability rating of at least 20%.

47.    On June 8, 2020, the PDBR rejected all of Captain Grenon's arguments. The PDBR recommended no changes to the PEB's adjudication or Captain Grenon's retirement status.

48.    The PDBR found that a 10% rating was appropriate for Captain Grenon's head condition because there "was no indication that the workplace was re-organized to accommodate him, or that he required GPS or writing things down due to clinically significant impairment from the cognitive disorder . . . or report he was reassigned from field duties to an administrative post." The PDBR noted that Captain Grenon had no issues with sleep, energy, or appetite, and that he appeared punctually at his VA appointment with a "normal mood and affect."

49.    As for Captain Grenon's cervical spine condition, the PDBR determined that its review was "limited to those conditions determined by the Physical Evaluation Board (PEB) to be unfitting for continued military service at Temporary Disability Retirement List removal, and when specifically requested by the CI, conditions determined by the PEB to be not unfitting upon TDRL removal."

50.    The table below portrays the disparity between the VA Rating and the PEB and PDBR ratings for Captain Grenon's conditions, as well as the difference in fitness determinations:

| Condition | VA Disability Rating | PEB / PDBR Disability Rating |
|---|---|---|
| **Head Injuries** | 30% | 10% |
| **Cervical Fracture and Fusion** | 20% | No Rating |
| **Total** | **>30%** | **10%** |

51.    On October 27, 2020, the Secretary of the Army adopted the PDBR's recommendations. That decision exhausted Captain Grenon's remedies with the DoD.

## THE PDBR'S DECISION VIOLATED THE APA

I.    *The PDBR's Decision Violated the VASRD and DoDI 6040.44*

52.    The PDBR's decision was arbitrary, capricious, contrary to law, and unsupported by substantial evidence because the PDBR failed to (1) adhere to the VASRD when reassessing Captain Grenon's rating for his unfitting closed head injury with cognitive disorder, and (2) follow the mandate in DoDI 6040.44., encl. 3 ¶ 4a(5)(b), that the PDBR must particularly consider any competing disability rating assigned by the VA within 12 months of a service member's discharge.

53.    Federal law requires the Secretary and the PDBR to strictly follow the VASRD. Service branches "may not deviate" from the VASRD, unless the Secretary of Defense and the Secretary of the VA jointly prescribed a deviation. 10 U.S.C. § 1261a; DoDI 6040.44, encl. 3 ¶ 3e. The Secretary of Defense and the Secretary of the VA have not prescribed any such deviation from the VASRD for Captain Grenon's conditions, and thus they were required to strictly follow the VASRD. Under the VASRD, mental disorders qualify for a rating of 30% for

"[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks . . . due to such symptoms as . . . depressed mood, anxiety, . . . chronic sleep impairment, [and] mild memory loss . . . ." *See* 38 C.F.R. § 4.130.

54.     The PDBR did not apply these factors. Despite the VASRD's mandate that a 30% rating only requires an "occasional decrease in work efficiency and intermittent periods of inability," the Secretary upheld the PDBR's 10% rating by relying on more stringent factors, such as the fact that Captain Grenon was not reassigned from field duties at his civilian job and did not need his workplace to be re-organized to accommodate him—factors not contemplated by the VASRD (e.g., "[There] was no indication that the workplace was re-organized to accommodate him, or that he required GPS or writing things down due to clinically significant impairment from the cognitive disorder . . . or report he was reassigned from field duties to an administrative post.").

55.     Additionally, Captain Grenon's cognitive disorder merited a 30% rating because the PEB determined that "[n]o significant change in symptoms or management in past interval." If Captain Grenon's symptoms and the frequency of those symptoms remained unchanged since his placement on the TDRL, any reduction in Captain Grenon's disability rating for his cognitive disorder was necessarily arbitrary, capricious, contrary to law and unsupported by substantial evidence.

56.     Strict application of DoDI 6040.44., encl. 3 ¶ 4a(5)(b), confirms that the PDBR's decision was arbitrary, capricious, unsupported by substantial evidence and contrary to law. DoDI 6040.44., encl. 3 ¶ 4a(5)(b), requires the PDBR to particularly consider any competing

disability rating assigned by the VA within 12 months of a service member's discharge. Here, the VA continued Captain Grenon's 30% disability rating for cognitive disorder after he attended a July 2005 examination.[2] Therefore, under the mandate of DoDI 6040.44., encl. 3 ¶ 4a(5)(b), only a 30% disability rating was supported.

57.    Finally, several other provisions of the VASRD also show how the PDBR erred in providing a 30% rating to Captain Grenon's cognitive disorder. For example, a 30% rating was warranted under 38 C.F.R. §§ § 3.102, 4.3 and 4.7, which respectively provide where "there is a question as to which of [the] two evaluations shall be applied," the PDBR must assign the higher rating "if the disability picture more nearly approximates the criteria required for that rating," and any reasonable doubt about the service member's disability rating must be resolved in favor of the service member.

58.    For these reasons, the Secretary's decision to assign a 10% rating to Captain Grenon's head injury is arbitrary, capricious, contrary to law, unsupported by substantial evidence and warrants at least a 30% rating under the VASRD.

_____

[2] The VA's July 2005 examination found that Captain Grenon had a cognitive disorder, not otherwise specified, with difficulties with memory, learning, and comprehension. The VA examination also specified that Captain Grenon "forgets what he has been told," had anger issues, and suffered from depressed mood. These same symptoms were sufficient for the VA to issue a 30% rating.

## II.    *The PDBR Erred In Refusing To Consider The Fitness Of Captain Grenon's Cervical Spine Condition*

59.    The PDBR is tasked not just with reviewing ratings of "unfitting conditions," but also "conditions **identified but not determined to be unfitting** by the physical evaluation board . . . when contended by the applicant." DoDI 6040.44 § 3(c) (emphasis added); *id.* encl. 3, § 1(b).

60.    The PDBR erred in refusing to address the fitness of Captain Grenon's cervical fracture injury. This condition was reviewable because: (1) the PEB explicitly identified this condition when it said that it had "considered it" but found it not unfitting; and (2) Captain Grenon then raised this issue in his PDBR application.

61.    Had the PDBR evaluated Captain Grenon's cervical fracture and fusion—as it was required to do—it would have found it unfitting and ratable at 20%.

62.    Captain Grenon's service treatment records and his VA examination both support a determination that his cervical spine was unfitting at discharge. According to the MEB's narrative summary, the MEB's physical examination found Captain Grenon's cervical spine flexion to be 55 degrees instead of the normal 90 degrees. Similarly, the VA noted Captain Grenon's cervical spine condition caused many functional impairments. For example, as a result of his limited cervical flexion, Captain Grenon could not separately turn his neck, head and shoulders, but had to turn his whole body when needing to look around. The VA examiner noted that Captain Grenon continued to suffer from "constant" pain in his neck and trapezius muscles that was exacerbated by physical activities and stress. As a result of this limited range of motion and pain, Captain Grenon was severely functionally limited; he could not read or look at a computer for long periods of time, and he had been unable to work in a military capacity for two

years.

63.     Thus, the Secretary's failure to consider Captain Grenon's cervical fracture and fusion was arbitrary, capricious, contrary to law, and unsupported by substantial evidence.

## COUNT I: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT FOR INSUFFICIENT RATING OF HEAD INJURY

64.     Plaintiff David J. Grenon incorporates by reference the allegations set forth in paragraphs 1- 63 above, as if fully set forth herein.

65.     The Secretary's October 27, 2020 decision to adopt the PDBR's recommendation and refusal to change Captain Grenon's disability status is subject to judicial review as a final "agency action" under the APA. 5 U.S.C. §§ 551(13), 701, 704. Captain Grenon's appeal to the PDBR was the final administrative option available to Captain Grenon for review of his disability rating. Captain Grenon has no further administrative remedies for challenging his erroneous combined disability rating. He has made every attempt in good faith to resolve this conflict within the DoD itself to no avail, and has exhausted all possible administrative remedies.

66.     Under the APA, 5 U.S.C. § 706(2)(A), this Court must hold unlawful and set aside a final agency action that is arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law. The Secretary adopted a 10% combined disability rating for Captain Grenon's unfitting head injury and cognitive disorder. That decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law because it failed to adhere to the 38 C.F.R. §§ 3.102, 4.130, 4.3 and 4.7 and the mandate in DoDI 6040.44., encl. 3 ¶ 4a(5)(b), that requires the PDBR to particularly consider any competing disability rating assigned by the VA within 12 months of a service member's discharge.

67.     Had the PDBR properly evaluated Captain Grenon's unfitting closed head injury with cognitive disorder in accordance with the VASRD and DoDI 6040.44, the only possible lawful outcome was the award of no less than  a 30% disability rating.

68.     Thus, the Secretary's decision to assign Captain Grenon a combined 10% disability rating is unlawful under the APA. 5 U.S.C. § 706(2)(A), and must be set aside.

## COUNT II: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT FOR FAILURE TO CONSIDER CAPTAIN GRENON'S CERVICAL INJURY

69.     Plaintiff David J. Grenon incorporates by reference the allegations set forth in paragraphs 1- 68 above, as if fully set forth herein.

70.     The Secretary's October 27, 2020 decision to adopt the PDBR's recommendation and refusal to change Captain Grenon's disability status is subject to judicial review as a final "agency action" under the APA. 5 U.S.C. §§ 551(13), 701, 704. Captain Grenon's appeal to the PDBR was the final administrative option available to Captain Grenon for review of his disability rating. Captain Grenon has no further administrative remedies for challenging his erroneous combined disability rating. Captain Grenon has made every attempt in good faith to resolve this conflict within the DoD itself to no avail, and has exhausted all possible administrative remedies.

71.     Under the APA, 5 U.S.C. § 706(2)(A), this Court must hold unlawful and set aside a final agency action that is arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law.

72.     The PDBR must review "conditions identified but not determined to be unfitting by the physical evaluation board (PEB) of the Military Department concerned, when contended by the applicant." DoDI 6040.44 (2015).

73.    The PEB identified Captain Grenon's cervical injury and found it was "not ratable" because it was "not considered as [an] unfitting condition[] on [his] original Physical Evaluation Board." Captain Grenon requested that the PDBR reexamine this decision, find Captain Grenon's injury to be separately unfitting, and rate his disability accordingly.

74.    Despite this, the PDBR refused to assess the fitness of Captain Grenon's cervical spine disability, which would have led to his cervical spine being found unfitting. Thus, the PDBR's failure to reassess the fitness of Captain Grenon's unfitting cervical spine condition was arbitrary, capricious, unsupported by substantial evidence, or otherwise contrary to the law.

<u>**PRAYER FOR RELIEF**</u>

Plaintiff David J. Grenon, respectfully requests this Court to enter judgment against the Defendants and award the following relief:

**(A)**    Find the PDBR decision affirming Plaintiff's combined disability rating of 10% without re-characterization of discharge to be a final agency action within the meaning of 5 U.S.C. §704;

**(B)**    Find that the Secretary's decision of October 27, 2020, and the PDBR's decision of June 8, 2020, were arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with law, and set aside those decisions under 5 U.S.C. § 706(2)(A);

**(C)**    Order the Secretary to correct Plaintiff's military records to reflect the correct disability rating for his closed head injury with cognitive disorder;

**(D)**    Order the Secretary to consider the fitness of Plaintiff's cervical condition;

**(E)**    Award fees and costs; and

22

**(F)**    Order such other and further relief the Court may deem just and proper.

Dated: January 17, 2023                    Respectfully submitted,

                                           /s/ Maximilian A. Grant

                                           Maximilian A. Grant (DC Bar No. 481610)
                                           **Latham & Watkins LLP**
                                           555 Eleventh Street, NW, Suite 1000
                                           Washington, D.C. 20004
                                           Telephone: (202) 637-2200
                                           max.grant@lw.com

                                           David W. Rowe (*pro hac vice forthcoming*)
                                           **Latham & Watkins LLP**
                                           355 South Grand Avenue, Suite 100
                                           Los Angeles, CA 90071
                                           Telephone: (213) 891-8229
                                           david.rowe@lw.com

                                           L. Elizabeth Yonkoski (*pro hac vice forthcoming*)
                                           **Latham & Watkins LLP**
                                           200 Clarendon Street
                                           Boston, MA 02116
                                           Telephone: (617) 880-4774
                                           elizabeth.yonkoski@lw.com

                                           **NATIONAL VETERANS LEGAL SERVICES
                                           PROGRAM**
                                           David Sonenshine (DC Bar No. 496138)
                                           Rochelle Bobroff (DC Bar No. 420892)
                                           Esther Leibfarth (DC Bar No. 1016515)
                                           1600 K Street, NW, Suite 500
                                           Washington, DC 20006
                                           (202) 621-5681
                                           david@nvlsp.org

                                           *Attorneys for Plaintiff David J. Grenon*